**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| VICTOR MAURER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GARMIN INTERNATIONAL, INC., GARMIN USA, INC., and GARMIN LTD.,<br><br>*Defendants*. | Case No. 1:26-cv-06389<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Victor Maurer ("Plaintiff"), by and through undersigned counsel, on behalf of himself and all others similarly situated (the "Class" or "Class Members"),[1] brings this First Amended Class Action Complaint against Defendant Garmin International, Inc., Defendant Garmin USA, Inc., and Defendant Garmin Ltd. (collectively, "Defendants" or "Garmin") and in support alleges, upon information and belief and based on the investigation of counsel, as follows:

## NATURE OF THE CASE

1. This action arises from Defendants' deceptive marketing of their Garmin Index S2 Smart Scale (the "Smart Scale"), which they promise accurately measures various body composition metrics despite the Smart Scale's inability to provide accurate body composition measurements and contrary scientific evidence.[2]

[1] Plaintiff brings class action claims on behalf of the Illinois Class and the Multi-State Class, which are herein referred to collectively as the "Class" or "Classes," and the members of the Classes are referred to as the "Class Members."
[2] The Smart Scale includes, but is not limited to, all Garmin Smart Scale products with model number 010-02294 and all substantially similar models.

2. The Smart Scale makes up a part of the greater billion-dollar weight loss industry. Companies, such as Garmin, regularly produce products to take advantage of the industry's vast and financially viable market. This includes smart body composition scales such as the Smart Scale, which are used and relied upon by consumers as part of their health and wellness regimens to provide insight beyond body weight.

3. Body composition scales are priced significantly higher than traditional body weight scales because of their purported advanced technology and ability to provide extensive data regarding body composition.

4. Unlike traditional weight scales, most smart scales, including those at issue in this litigation, claim to provide body composition metrics for greater health insights, such as body fat percentage, body mass index ("BMI"), skeletal muscle mass, bone mass, body water percentage, and more.

5. For those purchasing smart scales, accurate measurements of body composition are critical to the consumers' buying decision because the measurements allow them to make informed decisions regarding their health, including nutrition, fitness, and overall health management.

6. Smart scales are marketed to consumers as in-home body metric monitors used for accurately measuring body composition.

7. Garmin has sold smart scale products since 2015 and enjoys its current position as a leading manufacturer of "superior products for automotive, aviation, marine, outdoor and sports."[3]

---

[3] https://www.garmin.com/en-US/company/about-garmin/ (last accessed September 30, 2026).

8. Garmin's popular Smart Scale, shown in the image below, is sold as a health and fitness device advertised as being capable of accurately measuring body composition metrics.




[4]

9. Garmin is keenly aware that consumers are willing to pay a significant premium for products that purport to accurately measure their body composition. This is why Garmin uniformly represents on its own website and the product packaging that the Garmin Index S2 Smart Scale accurately measures body composition, which is repeated on the websites of authorized retailers, including Amazon, Best Buy, Target, and others detailed herein.

[4] https://www.garmin.com/en-US/p/679362/ (last accessed September 30, 2026).

10. However, pre-suit investigation and expert consultation has revealed that, inconsistent with reasonable consumer expectations and contrary to Garmin's marketing of the Smart Scale as capable of accurately measuring body composition, as described herein, the Smart Scale suffers from a uniform inadequate design preventing it from accurately measuring body composition, which exists at the point of purchase.

11. Specifically, the foot-to-foot bioelectrical impedance analysis ("BIA") technology in the Smart Scale is incapable of accurate body composition measurements, rendering Garmin's representations regarding the Smart Scale's capabilities false, misleading, and deceptive to consumers.

12. As the manufacturer of the Smart Scale, Garmin has been aware of these limitations for years, before and at the point of purchase, and as described herein, has received numerous complaints and warranty claims from consumers reporting inaccuracy in the Smart Scale's body composition measurements. Indeed, major players in the industry, like Garmin, monitor, review and analyze online reviews regarding their products, including the Smart Scale, on a regular basis. Upon information and belief, Garmin monitored these reviews, detailed and summarized *infra*, and was aware from these complaints dating back to at least 2021 that its Smart Scale is incapable of accurately measuring body composition.

13. Despite this knowledge, Garmin has marketed and sold the Smart Scale for at least $149.99, and has led reasonable consumers to believe that the Smart Scale is capable of accurately measuring body composition.

14. To persuade reasonable consumers, including Plaintiff and Class Members, to purchase the Smart Scale for this premium price, Garmin utilizes a deceptive marketing campaign

uniformly representing that the Smart Scale is capable of providing accurate measurements of body composition (or biometrics) ("Deceptive Biometric Marketing").

15. Through this Deceptive Biometric Marketing, Garmin clearly represents directly on the packaging that the Smart Scale provides body composition data as shown in the image below:[5]




[5] https://www.ebay.com/itm/326795444657 (last accessed September 30, 2026).

16. Garmin makes further material misrepresentations as part of its Deceptive Biometric Marketing regarding its Smart Scale's ability to accurately measure body composition on its website, Garmin.com and its storefront on Amazon.com, The Garmin Store, including that:

a. Garmin knows "**[a]ccuracy matters when it comes to your goals**;"[6]

b. The Smart Scale is capable of accurately measuring "**BODY MASS INDEX**" through "**an accurate measurement** of how your mass relates to your height to see if you're in a healthy range;"[7]

c. The Smart Scale accurately measures "**BODY FAT PERCENTAGE**" because **"**Your body needs some fat to be healthy. See what percentage of your mass is made up of essential and stored fat;"[8]

d. If the consumer is "[r]eady to see how much of your body is fat, muscle, bone or water? We got you;"[9]

e. "Track your progress toward you goals with **accurate measurements for weight, weight trend, body fat percentage, BMI, and more**;"[10]

f. "Whether you're an athlete in training or just trying to maintain a healthy weight, this sleek scale can give you a more holistic view of your health on an easy-to-read color display;"[11] and

---

[6] Garmin.com, *Index S2 Smart Scale,* https://www.garmin.com/en-US/p/679362/ (last accessed September 30, 2026).
[7] *Id.* and Amazon.com, *Garmin Index S2,* https://www.amazon.com/Garmin-Wireless-Connectivity-Measure-010-02294-02/dp/B08KC5V33R?th=1 (last accessed September 30, 2026).
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] Garmin.com, *Index S2 Smart Scale,* https://www.garmin.com/en-US/p/679362/ (last accessed September 30, 2026).

g. Consumers can "[g]et accurate measurements for weight, weight trend, body fat percentage, bmi, skeletal muscle mass and more."[12]

17. These representations are consistent with Garmin's uniform marketing message and confirm Garmin intends for consumers purchasing the Smart Scale to believe it provides accurate body composition measurements. And consumers purchasing a body composition scale, particularly one labeled as a "Smart Scale" will do just that—accurately measure their body composition. Indeed, no reasonable consumer would knowingly purchase a product that provided inaccurate body composition measurements.

18. Supporting the intent of its messaging to convince reasonable consumers that the Smart Scale can accurately measure body composition, in a press release dated October 14, 2020,[13] for the Smart Scale, Garmin made the following representations:

a. "Garmin® International, Inc., a unit of Garmin Ltd. (NASDAQ: GRMN), today announced the **Index S2™** smart scale with a new weight trend graph feature, **enhanced accuracy**, and a variety of biometric data for both serious athletes and health-minded customers alike." *Id.* (emphasis added);

b. "'The Index S2 builds on the success of the first-generation Garmin smart scale with **exceptional accuracy**, improved design, and new weight tracking features that make it valuable for the wellness-minded customer and elite athlete alike,'" said Dan Bartel, Garmin vice president of worldwide sales." *Id.* (emphasis added); and

---

[12] Amazon.com, *Garmin Index S2,* https://www.amazon.com/Garmin-Wireless-Connectivity-Measure-010-02294-02/dp/B08KC5V33R?th=1 (last accessed September 30, 2026).

[13] https://www.garmin.com/en-US/newsroom/press-release/sports-fitness/2020-measure-more-with-the-index-s2-smart-scale-from-garmin/ (last accessed September 30, 2026).

c. "For a more holistic view of one's health, the Index S2 measures a wide range of biometrics including weight, body fat percentage, BMI, skeletal muscle mass, bone mass and body water percentage." *Id.*

19. Similarly, in a "Training Video Series" for Smart Scale "Retail Training," which is made for "equipping [retail associates] with the knowledge and skills you need to confidently guide customers through Garmin's impressive lineup of products,"[14] and which is emblematic of Garmin's marketing strategy for the Smart Scale's accurate measurements, Garmin's representative states:[15]

a. "Here at Garmin, **we believe that when it comes to your goals, accuracy matters**. No matter if you're interested in tracking weight and body composition for basic health and wellness or for performance reasons, you should have a scale that lets you make a deeper connection to your health." *Id.* (emphasis added); and

b. "Knowledge is power and knowing your weight alone could be discouraging—not knowing if the weight you've lost or gained is due to muscle, water, or diet. So, we've designed the index S2 to not only give you **accurate measurements** for weight, but also for body fat percentage, body mass index, skeletal muscle mass and body water percentage – just to name a few." *Id.* (emphasis added)

20. Garmin repeats the same and/or substantially similar promises throughout its Deceptive Biometric Marketing, corroborating its misrepresentations on its website, the Garmin Store at Amazon.com, and on the websites of its authorized retailers such as Walmart, Target,

---

[14] https://www.youtube.com/channel/UCq8Ynh1czUZ5v852qN8u8UA (last accessed September 30, 2026).
[15] https://www.youtube.com/watch?v=R4w-LbTD6Qc (last accessed September 30, 2026).

BestBuy, and Kohls as well as online retailers, including Walmart.com,[16] Target.com,[17] BestBuy.com,[18] and Kohls.com.[19]

21. Consumers who purchase the Smart Scale are reasonably led to believe, based on Garmin's uniform Deceptive Biometric Marketing, and its clear marketing goals, that the Smart Scale accurately measures body composition.

22. However, these uniform representations regarding the accuracy of measuring body composition are false and deceptive because, as more fully described *infra* at paragraphs 77-100

---

[16] Walmart.com, *Garmin Index S2, Smart Scale,*https://www.walmart.com/ip/Garmin-Index-S2-Smart-Scale/657281927?wmlspartner=wlpa&selectedSellerId=1217&selectedOfferId=5030E4FFB49948789B5C3592A2CF8669&conditionGroupCode=1&sourceid=dsn_gdn_0c92c416-dbd6-42ec-845c-ecf69af2153d&veh=dsn&wmlspartner=dsn_gdn_0c92c416-dbd6-42ec-845c-ecf69af2153d&cn=0042_fy27_mp_mpa_lo_int_dis_pmax-p13n&wl9=pla&wl11=online&gad_source=4&gad_campaignid=23148469844&gbraid=0AAAADmfBIruBolb2ZrzRrIp3A4wWXyjH&gclid=CjwKCAjwidXQBhAZEiwA4egw6Lfei0Aj3nPeS0h2lSbSz6MZCfvZSEkMk_R46X1zb25kDz37Hh6P8RoCwYsQAvD_BwE (last accessed September 30, 2026).

[17] Target.com, *Garmin Index S2 Smart Scale,*https://www.target.com/p/garmin-index-s2-smart-scale-white/-/A-81565636?sid=&ref=tgt_adv_xsp&AFID=google_pla_df&fndsrc=tmnv&DFA=23792350506&CPNG=PLA_DVM%2Ba06Do000000WAeoIAG+-Garmin_MothersDay_FathersDay_2026-1802407&adgroup=PLA_Garmin&LID=5143198495pgs&network=g&device=c&location=9013457&gclsrc=aw.ds&gad_source=4&gad_campaignid=23792350506&gbraid=0AAAAD-5dfaZPPYlb9gZ4GDnmAwjd46UO&gclid=CjwKCAjwidXQBhAZEiwA4egw6PdqrzEa8QgcapOMvcPD8tw14Z3Fb2x2PXMcP3dyXhiWoQig_0vmABoCKOMQAvD_BwE (last accessed September 30, 2026).

[18] BestBuy.com, *Garmin USA - Index S2 Smart Scale,* https://www.bestbuy.com/product/garmin-usa-index-s2-smart-scale-black/JXF9YFTSVY/sku/6413864?utm_source=feed&extStoreId=&ref=212&loc=SaleEvent&gclsrc=aw.ds&gad_source=4&gad_campaignid=23857982289&gbraid=0AAAAD-ORIi0OnpcCnZlxDMwqWbjEXH9R&gclid=CjwKCAjwidXQBhAZEiwA4egw6H-Nr-LoMNIrfjWiwyhWbDVQiLmP856nP4Cm7TMUFCUm5pvf3bTtuRoCg6YQAvD_BwE (last accessed September 30, 2026).

[19] Kohls.com, *Garmin Index S2 Smart Scale,* https://www.kohls.com/product/prd-4670904/garmin-index-s2-smart-scale.jsp?skuid=72140275&CID=shopping30&utm_campaign=ELECTRONICS&utm_medium=CSE&utm_source=google&utm_product=72140275&utm_campaignid=20413595277&CID=shopping30&utm_campaign=SSC&utm_medium=CSE&utm_source=google&utm_campaignid=20413595277&gclsrc=aw.ds&gad_source=4&gad_campaignid=20151175665&gbraid=0AAAADytpHaS7D3gZcegYKx64h3pe7S_d&gclid=CjwKCAjwidXQBhAZEiwA4egw6PZGha8mH9Q5smdbubpY8aboVIsjIHgTxtRSao7rpuqTbYeckpBzPRoCnLsQAvD_BwE (last accessed September 30, 2026).

the foot-to-foot BIA technology in the Garmin Smart Scale is incapable of accurate body composition measurements and thus, unable to conform to Garmin's marketing promises.

23. Garmin's uniform representations were likewise misleading because Garmin also omitted the material fact that the Smart Scale's foot-to-foot BIA design and algorithmic extrapolation made its advertised body-composition metrics unreliable for the very use Garmin promoted.

24. Prior to purchasing the Smart Scale, Plaintiff and other Class Members did not know the Smart Scale was designed and manufactured without the ability to accurately measure body composition as advertised.

25. Garmin knew or should have known that its Smart Scale is incapable of measuring body composition as advertised and thus, is not fit for its intended purpose.

26. Nevertheless, Garmin failed to disclose the Smart Scale's true nature to Plaintiff and Class Members at the time of purchase or thereafter and continued to manufacture the Smart Scale without the ability to accurately measure body composition.

27. The Smart Scale's inability to accurately measure body composition is a material fact that reasonable consumers, including Plaintiff and Class Members, would have considered when deciding whether to purchase the Smart Scale.

28. Had Plaintiff and Class Members known about the Smart Scale's inability to accurately measure body composition at the time of purchase, Plaintiff and the Class Members would not have purchased the Smart Scale on the same terms or for the same price or would have paid significantly less for the Smart Scale.

29. Had Plaintiff and Class Members known about the Smart Scale's inability to accurately measure body composition at the time of purchase, Plaintiff and Class Members also

would not have agreed to Garmin's limited warranty ("Warranty") terms or limitations associated with the Warranty.

## PARTIES

### I. Plaintiff

30. Plaintiff Victor Maurer is a resident and citizen of Mount Prospect, Illinois.

31. Plaintiff Maurer purchased the Garmin Index S2 Smart Scale in August 2024 from Garmin through its storefront on Amazon.com, the Garmin Store, for $149.99.

32. Plaintiff Maurer shopped for a smart scale on Garmin.com and Amazon.com before his purchase.

33. Plaintiff Maurer read and reviewed Garmin's Deceptive Biometric Marketing including Garmin's material representations on Garmin.com and the Garmin Store at Amazon.com before his purchase and as described herein.

34. Plaintiff Maurer understood Garmin's affirmative representations as described herein to mean that his Smart Scale is capable of accurately measuring body composition. Those qualities were material to Plaintiff Maurer at the time of purchase.

35. Nowhere in Garmin's marketing and labeling of his Smart Scale that Plaintiff Maurer reviewed before and during his purchase did Garmin adequately disclose to Plaintiff Maurer that his Smart Scale is incapable of accurately measuring body composition.

36. In reliance on Garmin's Deceptive Biometric Marketing, Plaintiff Maurer purchased and paid a premium price for his Smart Scale.

37. Shortly after Plaintiff Maurer received his Smart Scale, he began using it as intended and recommended, consistent with Garmin's instructions, and maintained it in a reasonable manner.

38. However, during regular and foreseeable use of his Smart Scale, Plaintiff Maurer noticed that the measurements and readings from his Smart Scale as to his body composition including body fat percentage were not accurate.

39. Specifically, he noticed the readings from his Smart Scale differed significantly from his body composition measurements received from an alternative measuring technology, a Dual X-ray Absorptiometry ("DEXA") scan. Notably, he discovered that his BMI as reported by his Smart Scale was higher than that reported by the DEXA scan.

40. Accordingly, Plaintiff Maurer was deceived and damaged as a result of reviewing and relying on the uniform representations, as well as through Garmin's omissions regarding the limitations on the capabilities of the Smart Scale.

41. Due to his Smart Scale's inaccurate reporting of his body composition, Plaintiff Maurer cannot rely on his Smart Scale to perform as promised and, thus, he is left with a health and fitness product that cannot perform the functions that were material to him. Accordingly, his Smart Scale is worth less than what he paid.

42. Further, given the Smart Scale's inability to accurately measure body composition due to its foot-to-foot BIA, Plaintiff Maurer cannot trust that any replacement Smart Scale is not equally limited technologically and will not fail in the same way.

43. Prior to and at the time they purchased the Smart Scale, Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that the Smart Scale is incapable of accurately measuring body composition.

44. Had Plaintiff Maurer known of the Smart Scale's true nature, and of Garmin's deceptive, unfair, and unlawful conduct, he would not have purchased the Smart Scale on the same terms or for the same price or would have paid significantly less for the Smart Scale.

45. Plaintiff Maurer remains interested in purchasing Garmin products in the future, but at this time, due to Garmin's deceptive, unfair, and unlawful conduct described herein, he is unable to reasonably rely on Garmin's representations and marketing.

46. On May 29, 2026, Plaintiff Maurer put Garmin on notice of his claims and damages. Within this notice letter, which is attached hereto as Exhibit A, Plaintiff put Garmin on notice of each of his claims, including his warranty claims, and included a draft complaint with the warranty claims (also attached with Exhibit B), which were not included in the Complaint filed on May 29, 2026, so as to give Garmin notice of those claims and an opportunity to cure, which Garmin has not done. Plaintiff now includes those claims in this First Amended Complaint.

## II. Defendants

47. Garmin International, Inc. is organized under the laws of Kansas having a regular and established place of business located at 1200 E. 151st Street, Olathe, Kansas 66062. Garmin International, Inc. is a wholly-owned subsidiary of the publicly held Garmin Ltd.

48. Garmin USA, Inc. is a corporation organized and existing under the laws of Kansas having a regular and established place of business located at 1200 E. 151st Street, Olathe, Kansas 66062. Garmin USA, Inc. is a wholly-owned subsidiary of the publicly held Garmin Ltd.

49. Garmin Ltd. is a company organized and existing under the laws of Switzerland with its principal place of business at Mühlenstalstrasse 2, 8200 Schaffhausen, Switzerland.

50. Garmin International, Garmin USA, and Garmin Ltd. are related entities.

51. At all times relevant herein, Garmin International, Inc., Garmin USA, Inc., and Garmin Ltd. transacted and conducted business throughout the United States, including the state of Illinois.

52. Garmin International, Garmin USA, and Garmin Ltd. design, develop, manufacture, distribute, market, and direct the marketing of their Smart Scale throughout the United States, including the state of Illinois.

53. Garmin USA, Inc. and Garmin International, Inc. control the quality of Garmin products including the Smart Scale sold by authorized resellers.[20]

54. Defendants used, comingled, and combined their resources to design, develop, manufacture, market, and sell the Smart Scale.

55. At all times relevant here, the Defendants were actual or *de facto* joint ventures in the design, development, manufacture, marketing, and sale of the Smart Scale.

## JURISDICTION

56. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named and unnamed) class members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiff and Garmin are citizens of different States. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

57. This Court may exercise personal jurisdiction over Garmin because Garmin does substantial business in this State and within this District, receives substantial compensation and profit from the marketing, distribution, and sale of products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

58. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

---

[20] https://www.garmin.com/en-US/legal/consumer-limited-warranty/ (last accessed September 30, 2026).

## COMMON FACTUAL ALLEGATIONS

### I. Garmin markets itself as a trusted and reliable manufacturer of health and fitness products contrary to its actual business practices.

59. Garmin is a leading manufacturer of health and fitness products including scales and health and fitness monitoring devices like the Smart Scale at issue, serving over 45 million consumers in more than 100 countries and regions with a growing collection of various different product lines.

60. Garmin was founded in October 1989 in Lenexa, Kansas by Gary Burrell and Min Kao, and was primarily focused on manufacturing global positioning system technology for aviation, marine, and automotive markets. Over three decades, Garmin has enjoyed substantial success and growth and has expanded to become the self-proclaimed "renowned leader in the aviation, marine, automotive, outdoor, and fitness markets."[21]

61. Recently and according to Garmin's 2025 Annual Report, Garmin had "another remarkable year of growth and achievement" with "[r]evenue increas[ing] 15% to $7.25 billion, a new record, with growth and record revenue in every segment."[22] Garmin "launched over 100 new products" last year.

62. Garmin's success, at least in part, is a result of its highly sophisticated marketing and advertising. Indeed, throughout its over thirty years in the market, Garmin has worked very hard to convince consumers that its Garmin branded products are a cut above the rest including specifically with regard to accuracy.

---

[21] https://www.garmin.com.sg/company/about/ (last accessed September 30, 2026).
[22] https://www8.garmin.com/aboutGarmin/invRelations/reports/2025_Annual_Report.pdf (last accessed September 30, 2026).

63. Garmin consistently misleads consumers about its products, including the Smart Scale, by making the accuracy of the readings generated by all of its product lines a central component of its brand image.

64. For instance, Garmin envisions that its "products will be sought after for their compelling design, superior quality, and best value."[23]

65. Garmin further promises that it "offer[s] products with essential utility, leading-edge technologies, compelling features and exceptional ease of use to create clear differentiators that [Garmin's] customers appreciate and desire."[24]

66. As to its health and fitness devices specifically, Garmin claims that "Garmin believes that accurate data is important when it comes to achieving your health and fitness goals."[25]

67. As a result of Garmin's decades-long marketing scheme, consumers recognize the Garmin brand as a reliable source for health and fitness devices and technology including the Smart Scale at issue.

## II. **Garmin falsely and deceptively marketed its Smart Scale as capable of accurately measuring body composition.**

68. To further capitalize on consumers' desire for accurate health and fitness devices and technology and to gain a competitive advantage in the market, Garmin perpetrated its Deceptive Biometric Marketing campaign, through which it uniformly and intentionally represented to consumers that its Smart Scale is capable of accurately measuring body composition, and also failed to inform consumers that it is incapable of accurately measuring body composition.

---

[23] https://www.garmin.com/en-US/company/about-garmin/ (last accessed September 30, 2026).
[24] https://www.garmin.com/en-US/company/about-garmin/ (last accessed September 30, 2026).
[25] https://www.garmin.com/en-US/blog/health/how-can-i-use-a-garmin-smart-scale-to-achieve-my-goals/ (last accessed September 30, 2026).

69. Garmin carefully crafted a uniform, pervasive Deceptive Biometric Marketing campaign, which includes affirmative misrepresentations made directly to consumers about the Smart Scale's ability to accurately measure body composition as well as Garmin's material omissions of the Smart Scale's inability to accurately measure body composition due to its foot-to-foot BIA technology inherent in the Smart Scale.

70. Garmin disseminated its Deceptive Biometric Marketing directly to consumers nationwide before and at the point of purchase, throughout its marketing channels, including on its website, the Garmin Store at Amazon.com, the Smart Scale's packaging materials, and the websites of its authorized retailers.

71. As described above and herein, through its Deceptive Biometric Marketing, Garmin claims directly on the Smart Scale's box that it can provide body composition data as shown in the image below:[26]







[26] https://www.ebay.com/itm/326795444657 (last accessed September 30, 2026).

72. Further, as detailed above, Garmin makes blatant material misrepresentations regarding the Smart Scale's ability to accurately measure body composition on Garmin.com as well as on the Garmin Store at Amazon.com and authorized retailers, including that:

a. Garmin knows "**[a]ccuracy matters when it comes to your goals**;"[27]

b. The Smart Scale is capable of accurately measuring "**BODY MASS INDEX**" through "**an accurate measurement** of how your mass relates to your height to see if you're in a healthy range;"[28]

c. The Smart Scale accurately measures, "**BODY FAT PERCENTAGE**" because **"**Your body needs some fat to be healthy. See what percentage of your mass is made up of essential and stored fat;"[29]

d. If the consumer is "[r]eady to see how much of your body is fat, muscle, bone or water? We got you;"[30]

e. "Track your progress toward you goals with **accurate measurements for weight, weight trend, body fat percentage, BMI, and more**;"[31]

f. "Whether you're an athlete in training or just trying to maintain a healthy weight, this sleek scale can give you a more holistic view of your health on an easy-to-read color display;"[32] and

---

[27] Garmin.com, *Index S2 Smart Scale,* https://www.garmin.com/en-US/p/679362/ (last accessed September 30, 2026).
[28] *Id.* and Amazon.com, *Garmin Index S2,* https://www.amazon.com/Garmin-Wireless-Connectivity-Measure-010-02294-02/dp/B08KC5V33R?th=1 (last accessed September 30, 2026).
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] Garmin.com, *Index S2 Smart Scale,* https://www.garmin.com/en-US/p/679362/ (last accessed September 30, 2026).

g. Consumers can "[g]et accurate measurements for weight, weight trend, body fat percentage, bmi, skeletal muscle mass and more."[33]

73. Additionally, throughout its marketing channels, including on the Garmin Store at Amazon.com, Garmin markets the Smart Scale as being able to measure body composition using visual representations alongside its marketing language, as described herein, which are aimed to bolster Garmin's misrepresentations:




34

***

[33] Amazon.com, *Garmin Index S2,* https://www.amazon.com/Garmin-Wireless-Connectivity-Measure-010-02294-02/dp/B08KC5V33R?th=1 (last accessed September 30, 2026).
[34] https://www.amazon.com/Garmin-Wireless-Connectivity-Measure-010-02294-02/dp/B08KC5V33R/ref=cm_cr_arp_d_product_top?ie=UTF8&th=1 (last accessed September 30, 2026).




[35]




[36]

[35] https://www.amazon.com/Garmin-Wireless-Connectivity-Measure-010-02294-02/dp/B08KC5V33R/ref=cm_cr_arp_d_product_top?ie=UTF8&th=1 (last accessed September 30, 2026).

[36] https://www.amazon.com/Garmin-Wireless-Connectivity-Measure-010-02294-02/dp/B08KC5V33R/ref=cm_cr_arp_d_product_top?ie=UTF8&th=1 (last accessed September 30, 2026).

74. Additionally, Garmin markets the Smart Scale using video representations including a video titled "Garmin Index S2 Smart Scale," which touts that by using the Smart Scale, "YOU ONLY SEE WHAT MATTERS TO YOU" including "BODY FAT PERCENTAGE" on Garmin Store at Amazon.com. See the below screenshot from the video at timestamp 0:23:



[37]

75. These visual representations further support Garmin's uniform marketing message of leading reasonable consumers to believe that the Smart Scale is capable of accurately calculating body composition metrics and to purchase and pay the premium for the Smart Scale.

76. As a result of Garmin's uniform Deceptive Biometric Marketing, consumers, including Plaintiff and Class Members, were induced to purchase and pay a premium for the Smart Scale, which they reasonably understood would accurately measure body composition including

---

[37] https://www.amazon.com/Garmin-Wireless-Connectivity-Measure-010-02294-02/dp/B08KC5V33R/ref=cm_cr_arp_d_product_top?ie=UTF8&th=1 (last accessed September 30, 2026).

body fat percentage and did not expect the Smart Scale to be incapable of providing those measurements accurately.

## III. Garmin's Smart Scale is incapable of accurately measuring body composition.

77. Unbeknownst to reasonable consumers, including Plaintiff and Class Members at the time of purchase, Garmin designed, manufactured, distributed, marketed, and sold the Smart Scale nationwide without the ability to accurately measure body composition, which renders the Smart Scale incapable of performing its essential and advertised functions.

78. Following a review of numerous complaints submitted by concerned consumers, as more fully described below, about issues and inaccuracies with the Smart Scale's body composition readings including Plaintiff's experience and other reports submitted directly to Garmin online, Plaintiff's counsel performed a substantial investigation of the extent and the cause(s) of the Smart Scale's issues and inaccuracies with regard to its advertised functions including body composition readings.

79. Plaintiff's pre-suit investigation and expert consultation reveals that contrary to Garmin's Deceptive Biometric Marketing and inconsistent with reasonable consumer expectations, the Smart Scale's inaccurate readings result from uniform foot-to-foot BIA technology present in every Smart Scale when purchased.

### A. Garmin's Smart Scale relies on foot-to-foot BIA to measure body composition.

80. In its Smart Scale's user manuals[38] and on its website,[39] Garmin touts that its Smart Scale can purportedly provide body composition metrics through foot-to-foot BIA.

---

[38] https://www8.garmin.com/manuals/webhelp/GUID-0BADEBCF-960D-4961-856C-86B9204BC169/EN-US/GUID-CB348359-1E39-491B-86B5-79CB12FB6A8C.html (last accessed September 30, 2026).

[39] https://support.garmin.com/en-US/?faq=PInxAYu1UW47KXrLyvvKZA (last accessed September 30, 2026).

81. The BIA (or bioelectrical impedance analysis) operates by sending a small, unnoticeable electrical current through the body to measure the body's impedance (or resistance) to the current. As Garmin explains, "[t]he device sends a small amount of electrical current (which you do not feel) from one foot through your body to the other foot."[40]

82. The body's impedance (or resistance) to the current depends on the types of tissue the current passes through. Tissues with high water content, such as muscle and blood, transmit electric currents more easily than tissues with lower water content, like fat and bones.

83. After measuring this resistance, the Smart Scale feeds the measurements into proprietary and secret algorithms (often incorporating self-reported metrics like age, sex, and height) that interpret the BIA signals to calculate the body composition.

84. For simple weight measurements, the Smart Scale is likely as reliable as traditional scales. However, the Smart Scale is not accurate when it comes to measuring body fat percentage or lean mass due to limitations in BIA technology.

**B. Garmin's foot-to-foot BIA technology is incapable of accurately measuring body composition.**

85. Foot-to-foot BIA technology in smart scales, like those at issue in this litigation, do not provide accurate measurements for several reasons.

86. At the outset, the BIA data generated by Garmin's Smart Scale is created by a measurement taken only on the lower part of the body, which is extrapolated to the entire body. However, as Garmin, a pioneer in innovative health and fitness technology is or should be aware, when using a device where a consumer simply steps on the scale with bare feet, the current skips over the waist and above.

[40] *Id.*

87. In other words, foot-to-foot BIA measures the lower body impedance, estimating the remaining body sections with proprietary algorithms. This is highly problematic because more fat may be in the thighs than the mid-section, allowing the scale to over-represent body fat percentage. Consequently, unknown to consumers, they can find more accurate measurements by using alternative scales at their gyms or other stores with different technology that is capable of providing a more complete electrical measurement throughout the body.

88. Additionally, changes in body posture, and changes in body position, such as flexion of the legs, can also affect the accuracy of the calculations of these algorithms.

89. Further, body composition measurements from the Smart Scale are affected by the conditions of skin with which it is in contact. Skin temperature and water content (whether from internal hydration or externally from sweat) change resistance measurements.

90. Moreover, measurements are affected by the amount of surface contact between the feet and the scale; this depends on foot length and width as well as foot position.

91. Finally, changes in the amount of water in the body (having a full versus empty stomach or bladder or having water retention or swelling) also alter electrical resistance of the body.

92. Not only do these variables change from person to person, which reduces the Smart Scale’s accuracy (*i.e.*, how close to reality the measurement is), but these variables can change from moment to moment for a given individual, which reduces the scale's precision (*i.e.*, how reproducible the multiple measurements of the same person are).

93. These issues directly concern limitations in foot-to-foot BIA technology, which prevent accurate measurements of body composition. None of these limitations are disclosed to

consumers. Instead, Garmin advertises the Smart Scale as premium body composition scale capable of accurately measuring a variety of important and highly sought-after health metrics.

94. In addition to inadequacies in the BIA technology itself, a comparison of BIA to DEXA technology further confirms the unreliable and inaccurate nature of the Smart Scale. According to a 2021 study published in the journal JMIR mHealth uHealth, scientists compared the measurements obtained from three different models of foot-to-foot smart scales that use BIA technology with DEXA and found that the Smart Scale devices underestimated both fat and muscle mass by as much as 8 kg and 8.03 kg (approximately 17.6 pounds), or up to 8 percentage points.[41]

95. The study's authors concluded that "Smart [S]cales are not accurate for body composition and should not replace D[]XA in patient care."[42] Similarly, a 2022 study published in the British Journal of Nutrition found that foot-to-foot smart scales differed in up to 5 percentage points from D[]XA, and that they "tended to perform more poorly across metrics" compared to other methods of body composition measurement, including hand-to-foot products.[43]

96. To appreciate the significance of 5 to 10 percentage points of body fat, someone who takes a GLP-1 inhibitor medication for weight loss loses on average about 5 percentage points of body fat.[44] The images below also show how much body appearance changes with body fat percentage:

[41] *See* https://pmc.ncbi.nlm.nih.gov/articles/PMC8122302/, Accuracy of Smart Scales on Weight and Body Composition: Observational Study, April 30, 2021.
[42] *Id.*
[43] *See https://pmc.ncbi.nlm.nih.gov/articles/PMC10404482/#ref1*,
Assessing the reliability and cross-sectional and longitudinal validity of fifteen bioelectrical impedance analysis devices, Nov. 21, 2022.
[44] Wang Z, Wang L, Zhang X, et al. *Body Composition Changes After Bariatric Surgery or Treatment With GLP-1 Receptor Agonists*. JAMA Netw Open. 2026;9(1):e2553323. doi:10.1001/jamanetworkopen.2025.53323







97. In its design, manufacture, and production of the Smart Scale, Garmin failed to conduct the testing required to ensure its Smart Scale was capable of accurately measuring body composition including body weight percentage and/or conducted inadequate testing, which is not only contrary to its duties as a manufacturer of health and fitness devices and technology but is also inconsistent with its Deceptive Biometric Marketing.

98. The Smart Scale's inability to accurately measure body composition due to its foot-to-foot BIA technology, as described above, is uniform across each Smart Scale, exists at the point of purchase, and results in the inaccurate body composition readings and measurements as reported by Plaintiff and Class Members as described herein.

99. Garmin intentionally chose to design the Smart Scale using technology, designs, and materials incapable of accurately reporting body composition including body fat percentage as required for the device to perform its essential functions so that it could garner more market share at the expense of consumers.

100. As one of the industry leaders in health and fitness technology, Garmin has the resources and learned institutional knowledge to properly and adequately test its Smart Scale before injecting it into the stream of consumers for use by consumers nationwide.

## IV. **Garmin's longstanding knowledge of its Smart Scale's inability to accurately measure body composition.**

101. Since at least 2021, Garmin has received complaints about the effectiveness of its products, as detailed below.

102. Manufacturers of health and fitness monitoring devices, including Garmin, are well aware of the significant need for research and testing of its products for accuracy, before introducing them to the marketplace.

103. As the designer and manufacturer responsible for testing and evaluating its product lines, Garmin has long been aware that its Smart Scale is incapable of accurately measuring body composition.

104. In addition to Garmin's own testing of the Smart Scale and specialized knowledge, Garmin also knew or should have known that its Smart Scale is incapable of accurately measuring body composition because numerous consumers submitted complaints to Garmin and Garmin's authorized retailers regarding issues and inaccuracies with the Smart Scale's body composition readings.

105. For example, on Amazon.com, numerous consumers have reported issues and inaccuracies with the Smart Scale's body composition readings to Garmin. However, despite this alarming outcry from purchasers, Garmin has neglected to reply to these complaints. See the sample consumer complaints below submitted on Amazon.com:[45]

---

[45] https://www.amazon.com/portal/customer-reviews/B08KC5V33R/ref=cm_cr_arp_d_viewopt_srt?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews&sortBy=recent#reviews-filter-bar (last accessed September 30, 2026).

gabba_hey75

**Body percentages are a joke**

Reviewed in the United States on September 18, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

It works as a scale but the body percentage info is nonsense. I'm a lean and fit male, fairly muscular with clearly visible abs, and it says I'm 24% body fat. It says my girlfriend is leaner at 18%. The scanner at the gym says I'm at 8%. Just get a regular scale.

***

Anthony Prainito

**Inaccurate reporting for hard bodies**

Reviewed in the United States on July 25, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

Avoid buying if your muscle build is denser than average. It will report lean mass as bodyfat by about 5-10%, basically rendering the scale useless for tracking body composition if you're a dense, athletic build. Junk numbers other than weight. Still decent if you want weight being part of your Garmin ecosystem

***

PD

**Inaccurate measurements**

Reviewed in the United States on July 27, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

I've enjoyed Garmin products for the last two decades, but this one is riddled with issues: inaccurate statistics even after measuring back to back, hard time to even start measurements despite battery changes and reset. I have buyer's remorse given the price, would have been better to just buy a simple weight scale.

***

Amazon Customer

**Woefully Inaccurate fat percentge and muscle mass**

Reviewed in the United States on July 11, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

The scale is accurate for weight and nice the way it loads your information.

However, percent fat and skeletal muscle mass are woefully inaccurate. For percent fat the Garmin had been reading around 24% for 3 months as I lost weight. Yesterday the Dexascan said I had 13.6% body fat. Garmin said I had been losing muscle mass for 4 months. The Dexascan said I gained 3 pounds of muscle in the last 4 months.

***

Tyler Bowen

**Bad accuracy**

Reviewed in the United States on June 21, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

Horribly inaccurate. Says I'm 19% bodyfat and 70lbs of muscle but when I went to an actual Dexa scan, I'm at 11% bodyfat and 85lbs of lean muscle. Was hoping this would help keep track for my watch, what a waste.

***

David Seaton

**Not accurate**

Reviewed in the United States on June 18, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

This scale is very accurate for your weight and if you use the Garmin Connect app it's cool because it I uploads your data into the app. If you want an accurate reading for body fat % though then don't buy this scale. I workout 5 days per week, I'm 5'9" and 193 pounds and I have visible abs, not a 6 pack but decent abs. This scale said I'm at 26% body fat. That's not possible with abs. My last scan in a doctor's office had me at 18% and I was weighing 202 at the time. This thing is not worth $200.

***

runnerscott

**Overpriced for what it does and doesn't do.**

Reviewed in the United States on June 3, 2026

Style: White | Pattern Name: Smart Scale | Verified Purchase

Good that it sync's with Garmin app used for working out and tracking historical data, but overpriced for what you get. The InBody composition scale at sports doctors office has me at 11% body fat, this thing says 23% and that I should lose weight. Save your money, get a Renpho scale, and enter weight into garmin app.

***

mark groves

**This scale is junk don't waste your money on it**

Reviewed in the United States on May 22, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

This scale is a waist of money it is very inaccurate with muscle mass body fat and bone weight I checked it with a high end professional scale and the readings weren't even close , compared to the professional scale . It only measures weight actually every thing else is just a gimmick it does connect to the garmen app well but over all I give this scale an F and a waste of money for the price

***

Caleb Chapman

★★☆☆☆ **Wildly inaccurate**

Reviewed in the United States on May 1, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

I love that it syncs with Garmin, unfortunately they don't allow any other scale to do that so you have to buy their over priced POS.

I'm 12-14% body fat and this scale puts me at a whopping 19%

Yes you can adjust it, but come on, for the most expensive scale on the market, it should be one of the most accurate

***

Dennis Conway

★☆☆☆☆ **Body Fat % is garbage**

Reviewed in the United States on April 6, 2026

Style: Black | Pattern Name: Smart Scale | Verified Purchase

I am 13% body fat. The scale tells me I'm at 26%. Garmin was no help. $200 to tell me my weight is residuals.

***

JPS

★☆☆☆☆ **BF% and Weight Measures are NOT accurate**

Reviewed in the United States on January 6, 2026

Style: White | Pattern Name: Smart Scale | Verified Purchase

I really wanted this to work. I love my Garmin Fenix 8 and love that it integrate with the Garmin Connect as well. I also like that it's white.

I don't really support the use of a 2-point BIA but was hoping the industry has advanced and maybe Garmin would have come up with an algorithm that estimated BF% similarly to a 4-point multi-freq BIA. I have access to an InBody 770 4-point BIA at the hospital my wife works at, but it costs me $75 per measure (they waive the analysis fee since I'm an employee spouse).

Anyways…

I compared this Garmin Index S2 with two other 2-point BIA scales (names withheld) that had better reviews and were less expensive.

Body Fat Percentage (BF% or PBF)

The other two scales came MUCH closer to what a 4-point InBody 770 measurement would give for BF% than the Garmin. I fluctuate on the 4-point between 17-20% when I'm not trying to cut weight. A three day measurement in the morning (fasting) with the Garmin scale had me at 35%, 23%, and 29%. Not only inaccurate, but unreliable. The other two scales I tried that were about half the price, were much closer to what I would expect, and reliably gave me similar readings each time.

Weight Measure

Although the Garmin was 1-3 pounds different than the other scales, it reliably measures as such. Problem is: if I can't have both numbers be accurate AND reliable, there's no point. I also don't have access to the InBody 770 at work without paying $75 for each measure so I was hoping I could find something worth having at home.

I'll end up keeping one of two I bought. Not white and only integrates with Apple Health.

***

Kara

**Lean Mass Inaccuracy**

Reviewed in the United States on November 22, 2025

Style: Black | Pattern Name: Smart Scale | Verified Purchase

I love my Garmin watch, and I wanted to like the scale—I have determined after having it for one month that it does not work at all for body fat percentage. My in-body scan says that I'm 16% body fat and 60 pounds of lean mass. This scale says I'm 27% body fat and overweight based on BMI. It's made my fitness age go down in Garmin because of this. It also made me really irrationally concerned about my lean mass—I weight train regularly, and this implied I had a sedentary level of muscle. All in all, I wish I could return, but the return window has unfortunately closed. [46]

***

KF

**Disappointed by Inaccurate Measurements**

Reviewed in the United States on November 10, 2024

Style: Black | Pattern Name: Smart Scale | Verified Purchase

I recently purchased the Garmin Index S2 scale, expecting somewhat reliable detailed body composition readings given its premium price. While the weight measurement is accurate, the advanced features like body fat, muscle mass, and bone mass are consistently inaccurate considering my fitness level at physique, and together with water weight (all converted to kg) add up to almost 20% more than my actual total weight.

I've meticulously followed all setup instructions, including using a flat, hard surface and weighing myself at the same time each day with dry, bare feet. I have reset the scale. Despite these efforts, the body composition metrics remain off, which is frustrating given the cost of this device.

While I understand that body composition measurements from smart scales can be inherently inaccurate and are more useful for tracking trends over time than providing absolute values, the significant discrepancies I've experienced with this scale make even the tracking feature useless, as I'm starting from an obviously incorrect baseline.

Unfortunately, returning it isn't feasible due to high international shipping costs, leaving me stuck with an expensive and largely useless gadget.

I cannot give a purchase recommendation for this device. I hope Garmin addresses these issues, as the current performance does not meet the expected standards for a device in this price range.

***

[46] https://www.amazon.com/gp/customer-reviews/R118KKEE1IYYHR/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8 (last accessed September 30, 2026).

Kathy B

★☆☆☆☆ **Body Fat and Muscle Calculations Are Grossly Inaccurate; App Hard to Pair and Hard to Use**

Reviewed in the United States on June 15, 2024

Style: Black | Pattern Name: Smart Scale | Verified Purchase

I'm really disappointed in this scale. I had a professional body composition analysis a week ago and the scale is giving me very different numbers: 28% on scale vs 17% from professional analysis for body fat and 38lbs on scale vs 56lbs from professional analysis for muscle. How do I calibrate the scale? I tried changing the activity mode and the birthday based on other postings with no luck. So far, this device is huge disappointment. The weight seems accurate, but I could have purchased a much cheaper scale for that. My previous (and much cheaper) scale from another brand that lasted for 12 years before it died had an athlete mode that gave truer results. And it was a lot less expensive. I regret not repurchasing that brand and will never consider another Garmin product.

FYI, the control for the birthdate is ridiculous and took me 2 minutes to scroll to 1968. Do you have QA and UX people in your IT department? Please add an action item for them.

***

Grandie

★★☆☆☆ **Not ACCURATE!**

Reviewed in the United States on January 28, 2022

Style: White | Pattern Name: Smart Scale | Verified Purchase

If you are looking for spending big cash a sleek looking scale that tells you how much you weigh, then this scale is for you. However of you bought this because you have used Omron or InBody and wanted correct BF%, BMI , SMM, or bone mass that got sent to your Connect app, then this is not for you. Garmin uses an algorithm to calculate all this info based on what age and gender you input to the app. Change your age and magically you have a less BMI. Change your gender to male and watch that body fat % disappear. The scale is inaccurate and is advertised falsely. Does not measure anything as claimed. Garmin Forum support will blow smoke up your @++ all day long that they are working on it but you cannot change hardware that was never meant to physically measure metrics. Save your money an stay away from this Garmin product.

***

Michael J Hale Jr

★★☆☆☆ **Body fat % does not work**

Reviewed in the United States on January 14, 2022

Style: Black | Pattern Name: Smart Scale | Verified Purchase

Garmin makes excuses that their algorithm is different than other products that read bf but the fact is it just does not work. It is almost double what Skulpt reads and a simple web search will point you to sites that take simple measurements to estimate much closer than the Garmin scale. Do not buy this product if you want accurate bf readings. And Technical support for Garmin is useless when they ever respond.

***

KMM

★★☆☆☆ **Body fat is significantly off**

Reviewed in the United States on December 22, 2021

Style: Black | Pattern Name: Smart Scale | Verified Purchase

I typically love garmin products but this is a big miss. The body fat feature just doesn't work. It is off by ~7%. I verified this using 2 other superior devices as well as a clinical body fat scan. Avoid this device if you are interested in the body fat feature. I would go as far as to call it defective.

***

Cory K.

★★☆☆☆ **Unreliable and Inaccurate**

Reviewed in the United States on January 20, 2021

Style: Black | Pattern Name: Smart Scale | Verified Purchase

When I received the scale it wouldn't want to pair. I reset it and it didn't want to turn back on. I changed batteries, tried resetting again several times, nothing. Few hours later it turned on and I successfully paired it...finally.

After setup, naturally I tried to weigh myself. I did it 5 times in a row. Most measurements were within 0.1 lbs, however one was 4 lbs off. Additionally, the body percent fat reading was way high. It read 20% and I know I'm not near that figure as I keep fit and have measured about 7% on caliper tests. Tanita brand scales appear much more accurate in estimating body fat.

So I returned this scale. For the amount of money you're spending on this scale, you can find A LOT of other brands that perform similarly and more accurately.

106. Garmin received similar complaints on BestBuy.com, only it chose to respond to some of these reviews apologizing and directing consumers to its website and customer support or recommending to not wear socks when using the Smart Scale despite knowing that its technology is incapable of providing accurate measurements even with bare feet.

**Body fat percentage shows almost double**

RobertA Posted 2 years ago

Incentivized | Verified Purchaser | My Best Buy® Member | Owned for 1 month

Body fat percentage is way off compared to other qaulit scales and actual measurements.

✕ No, I would not recommend this to a friend

Helpful (0) | Unhelpful (0) | Report | Comment

Brand response from **GarminProductExpert**
Posted 2 years ago

If you're experiencing an issue with your Index S2 Smart Scale, please go to support.garmin.com where you'll find many helpful FAQ's and video's on the functions of the device. If you still need assistance, you can reach out directly to a product support associate from that link. <img src="https://s3.amazonaws.com/stratos-logos/logos/Garmin.jpg" alt="Garmin" title="Garmin" style="display: block !important; margin-top: 2em !important; border: 1px solid #ccc !important; padding: 2px !important; background-color: white !important;" />

***

**Not *accurate***

PJPJ Posted 4 years ago

Verified Purchaser | Incentivized | My Best Buy® Member | Owned for less than 1 week

Bought it and returned it. This, amongst other smart scales in the market, are not *accurate*. I usually hover in between 7-12 percent body fat depending on season. This showed me at 22%. In regards to hydration this scale consistently showed me at 55% hydrated in the evenings, which I'm hydrated, and first thing in the morning, which I am dehydrated from lack of water for being asleep for the past 5-7 hours.

✕ No, I would not recommend this to a friend

Helpful (0) | Unhelpful (2) | Report | Comment

Brand response from **GarminProductExpert**
Posted 4 years ago

I'm sorry to hear you were disappointed in your Index S2 scale. We offer support at support.garmin.com where you'll find many helpful FAQ's and videos on the functions of the device. As well, from that link you can reach out directly to a product support specialist from that page.

Debbie with Garmin <img src="https://s3.amazonaws.com/stratos-logos/logos/Garmin.jpg" alt="Garmin" title="Garmin" style="display: block !important; margin-top: 2em !important; border: 1px solid #ccc !important; padding: 2px !important; background-color: white !important;" />

***

★☆☆☆☆

**Body Fat %**

jcasa Posted 4 years ago

Incentivized | My Best Buy® Elite Member | Verified Purchaser

Everything about the scale is great except for the body fat % calculations. Regardless of the activity level you set in your profile the algorithm or method of calculating body fat is grossly incorrect. I just had an Inbody scan done at my gym that showed me at 15% body fat. This scale has me at 24.5% body fat. I will be returning this.

✕ No, I would not recommend this to a friend

Helpful (0) | Unhelpful (1) | Report | Comment

Brand response from **GarminProductExpert**

Posted 4 years ago

I'm sorry to hear you're experiencing an issue with your Index S2 Smart Scale. Please be sure you're not wearing socks, and if using on carpet you use the carpet risers. You may want to go to support.garmin.com where you'll find many helpful FAQ's and video's on the functions of the device. As well, if you're still experiencing an issue with your scale you can reach out directly to a product support associate for assistance.

Debbie with Garmin <img src="https://s3.amazonaws.com/stratos-logos/logos/Garmin.jpg" alt="Garmin" title="Garmin" style="display: block !important; margin-top: 2em !important; border: 1px solid #ccc !important; padding: 2px !important; background-color: white !important;" />

107. Similarly, on Target.com, consumers submitted complaints and Garmin responded to a handful thanking them for the feedback and claiming to "understand how important consistent and reliable measurements are when tracking your health metrics," but only referring them to customer service or again recommending to not wear socks.

★☆☆☆☆

5 November, 2025

originally posted on Garmin

### A disappointment

I bought this to track my body composition the number varies a lot also it does not match with inbody test that I do once every two month Basically it is glorified bathroom scale. Also for second person using this they have to create an app and also getting it to give all the metrics for second person is pretty hard.

**1 reply from Care team - 7 months ago**

Thanks for taking the time to share your feedback! We understand how important consistent and reliable measurements are when tracking your health metrics. It's worth noting that differences between the Index S2 and other devices are expected, as the methods and calibration used can vary. For additional information, visit http://ms.spr.ly/6421tyncB. Regarding multi-user setup, each person will need their own Garmin Connect account so the scale can correctly recognize and sync their individual data. This article offers a step-by-step guide for adding additional users: http://ms.spr.ly/6422tync8. If you're still seeing inconsistent readings or setup issues, we'd be happy to take a closer look! Please reach out to our Support team directly at 1-800-800-1020 Monday - Friday, 7am - 7pm Central.

***

★☆☆☆☆

18 September, 2025

originally posted on Garmin

**A very expensive paperweight**

Accurate with weight but way off on other body metrics.

**1 reply from Care team - 8 months ago**

If you notice that your Index S2 is showing inaccurate information, there are a couple basic troubleshooting steps I recommend starting with: 1) Ensure that you're stepping on the scale with bare feet because the scale relies on electrical currents to estimate aspects of your body composition. 2) Ensure that Athlete Mode is either enabled or disabled, as necessary. Here's more information on that: http://ms.spr.ly/6421soX5N If you're still having trouble with these metrics afterward, please call 800-800-1020 to speak with a Garmin Support representative and get further assistance. *KC

***

★☆☆☆☆

3 May, 2025

originally posted on ExpertVoice.com expertvoice

**Inaccurate Weight and Body Fat Readings**

The Garmin Index S2 has a clean design and syncs well with Garmin Connect, but the accuracy is a real issue. Compared to a recent DEXA scan, the scale was off by 5 pounds in weight and more than 5% in body fat. There's no way to calibrate or adjust these numbers, which makes it hard to trust the data. If you're just looking to monitor general trends over time, it might do the job. But if you're serious about tracking accurate body composition, especially compared to clinical-grade tools like DEXA, this scale falls short.

108. Companies like Garmin regularly monitor online reviews regarding their Smart Scale. Upon information and belief, Garmin monitored these reviews and was aware that its Smart Scale is incapable of accurately measuring body composition.

109. Garmin has a duty to disclose that its Smart Scale is incapable of accurately measuring body composition and to not conceal that material fact from Plaintiff and Class Members. Garmin's failure to disclose, or active concealment of, that its Smart Scale is incapable of accurately measuring body composition caused Plaintiff and Class Members injury.

110. Nevertheless, Garmin is currently still selling the Smart Scale and falsely representing it as suitable for its intended purpose including accurately measuring body

composition, and failing to disclose that its Smart Scale is incapable of accurately measuring body composition, when it knows that the Smart Scale cannot comply with its Deceptive Biometric Marketing.

## V. <u>Garmin's Limited Warranty.</u>

111. Garmin expressly and impliedly warrants, via its Deceptive Biometric Marketing and its user manuals, advertisements, pamphlets, brochures, circulars, samples, and/or models, that the Smart Scale is fit for the ordinary purpose for which it is sold.

112. Further, each Smart Scale comes with Garmin's one-year Limited Warranty, which states that its "[n]on-aviation products are warranted to be free from defects in materials or workmanship for one year from the date of purchase."[47]

113. Further, Garmin's Limited Warranty states "IN NO EVENT SHALL GARMIN BE LIABLE IN A CLAIM FOR BREACH OF WARRANTY FOR ANY INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, WHETHER RESULTING FROM THE USE MISUSE OR INABILITY TO USE THIS PRODUCT OR FROM DEFECTS IN THE PRODUCT." [48]

114. However, as described herein, the Smart Scale is incapable of accurately measuring body composition prior to and at the time of purchase causing the Smart Scale to commonly and consistently fail in its primary purpose.

115. Garmin's Limited Warranty described the claims process as follows:

> If during the warranty period you submit a claim for warranty service in accordance with this Limited Warranty, then Garmin will, at its option: (i) repair the device using new parts or previously used parts that satisfy Garmin's quality standards, (ii) replace the device with a new device or a Garmin Recertified device that meets Garmin's quality standards, or (iii) exchange the device for a full refund of your

---

[47] https://www.garmin.com/en-US/legal/consumer-limited-warranty/ (last accessed September 30, 2026).
[48] https://www.garmin.com/en-US/legal/consumer-limited-warranty/ (last accessed September 30, 2026).

> purchase price. SUCH REMEDY SHALL BE YOUR SOLE AND EXCLUSIVE REMEDY FOR ANY BREACH OF WARRANTY. [49]

116. Prior to purchasing the Smart Scale, Plaintiff and other Class Members did not know that the Smart Scale is incapable of accurately measuring body composition contrary to Garmin's Deceptive Biometric Marketing, rendering the Smart Scale incapable of performing as advertised and expected by Plaintiff and consumers. Consumers had no reason to know that Garmin's marketing scheme was deceptive or misleading, and that the Smart Scale is incapable of accurately measuring body composition.

117. Further, upon information and belief, when consumers make warranty claims related to the Smart Scale's inability to accurately measure body composition, as described herein, the claims are improperly handled, including Garmin replacing the Smart Scale with another Smart Scale that is unable to accurately measure body composition, or denying that its Smart Scale is incapable of accurately measuring body composition. Additionally, any repair is futile because the Smart Scale does not contain the technology required to perform as advertised.

118. Garmin clearly intended its warranties to apply directly to consumers, including Plaintiff and Class Members.

119. Garmin's manifest intent that its warranties apply to Plaintiff and Class Members as third-party beneficiaries is evident from the statements contained in its Smart Scale literature, including its Limited Warranty, which begins the date of the consumers' purchases and excludes second-hand products.

120. Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiaries of the Smart Scale and Garmin's warranties.

---

[49] https://www.garmin.com/en-US/legal/consumer-limited-warranty/ (last accessed September 30, 2026).

## UNCONSCIONABILITY AND FAILURE OF ESSENTIAL PURPOSE OF THE EXPRESS AND IMPLIED WARRANTIES

121. The express and implied warranties relating to the Smart Scale are collectively and individually the result of surprise and oppression and are so one-sided and overly harsh such that they are both procedurally and substantively unconscionable.

122. Specifically, Garmin's express and implied warranties relating to the Smart Scale are unconscionable as follows:

a. In the exclusion of "incidental, special, indirect or consequential damages" regardless of "whether resulting from the use misuse or inability to use this product or from defects in the product," despite knowing that the fact that its Smart Scale is incapable of accurately measuring body composition would cause such damages;[50]

b. In requiring consumers to "be responsible for any transportation cost" for repairs or replacements;"[51]

c. Garmin knew or should have known that its Smart Scale is incapable of accurately measuring body composition prior to and at the time of sale of the Smart Scale to consumers, including from the complaints, many of which were directly reported to Garmin, as well as from the consumer complaints and Warranty claims made directly to Garmin;

d. Garmin was in a superior position to know of, remedy and disclose that its Smart Scale is incapable of accurately measuring body composition to Plaintiff and Class

---

[50] https://www.garmin.com/en-US/legal/consumer-limited-warranty/
[51] *Id.*

Members, who could not have known that the Smart Scale is incapable of accurately measuring body composition at the time of purchase;

e. Plaintiff and Class Members had no bargaining power as they were unable to negotiate the terms of the Warranty, including the durational time limitation or disclaimers contained therein;

f. Plaintiff and Class Members had no meaningful choice in choosing another brand of smart scale, as any other reputable brand would likewise have warranties containing the same or similar terms and limitations;

g. Garmin abused the special relationship it created with consumers through its Deceptive Biometric Marketing and through its designing, manufacturing, marketing, and selling the Smart Scale as a product capable of accurately measuring body composition such that consumers had no choice other than to trust Garmin's representations and thus accept the terms of the warranties;

h. Plaintiff and Class Members had no ability to discover that its Smart Scale is incapable of accurately measuring body composition at the time of sale due to the latency of the issues detailed herein, and without being an expert on design, manufacturing, and/or material selection;

i. The durational limitations as well as the limited relief provided in the Limited Warranty are grossly inadequate to protect Plaintiff and Class Members from the Defect;

j. Garmin was in breach of the Limited Warranty at the time Plaintiff and Class Members purchased the Smart Scale because it is incapable of accurately measuring

body composition when it comes off the assembly line. Thus, at the time the Smart Scale was sold to consumers, Garmin was already in violation of its warranty;

k. Garmin sold the Smart Scale with knowledge that it is incapable of accurately measuring body composition and of the fact that material fact may not be visible until after the Smart Scale is in use;

l. Garmin sold the Smart Scale knowing that it was replacing it with an equally technologically limited Smart Scale, would result in the same failure;

m. Garmin sold the Smart Scale knowing that it was not capable of being repaired or replaced with a non-defective Smart Scale within the Warranty period, or thereafter; and

n. Plaintiff and Class Members would have negotiated better terms in the purchase of its Smart Scale and Warranty had they been aware of the Smart Scale's inability to accurately measure body composition and been able to negotiate such terms; and

o. The terms of the Warranty unreasonably favor Garmin over Plaintiff and Class Members.

123. Extended product warranties are not available for purchase, and thus, the consumers have little choice but to accept the limited terms of the original Warranty.

124. Accordingly, recovery by Plaintiff and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

## TOLLING OF THE STATUTE OF LIMITATIONS

**A. Discovery Rule Tolling**

125. Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their Smart Scale is incapable of accurately measuring body composition within the time-period of any applicable statutes of limitation.

126. Among other things, neither Plaintiff nor the other Class Members knew or could have known that the Smart Scale is incapable of accurately measuring body composition.

127. Further, Plaintiff and Class Members had no knowledge of the Smart Scale's inability to accurately measure body composition, which is not visible to consumers. Garmin attempted to conceal its knowledge that its Smart Scale is incapable of accurately measuring body composition or otherwise capitalize on that fact further by selling equally technologically limited replacements. Accordingly, any applicable statute of limitation is tolled.

**B. Fraudulent Concealment Tolling**

128. Throughout the time period relevant to this action, Garmin concealed from and failed to disclose to Plaintiff and the other Class Members vital information regarding the Smart Scale's inability to accurately measure body composition, as described herein.

129. Garmin kept Plaintiff and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class Members could have discovered that its Smart Scale is incapable of accurately measuring body composition, even upon reasonable exercise of due diligence.

130. Throughout the Class Period, Garmin has been aware that the Smart Scale it designed, manufactured, selected materials for, and sold is incapable of accurately measuring body

composition resulting in the Smart Scale's inability to comply with Garmin's Deceptive Biometric Marketing including the direct misrepresentations and material omissions detailed herein.

131. Despite its knowledge that the Smart Scale is incapable of accurately measuring body composition, Garmin failed to disclose and/or concealed, and continues to conceal, this critical information from Plaintiff and the other Class Members, even though, at any point in time, it could have disclosed that its Smart Scale is incapable of accurately measuring body composition through recall, individual correspondence, media release, or by other means.

132. Plaintiff and the other Class Members justifiably relied on Garmin to disclose that the Smart Scale they purchased is incapable of accurately measuring body composition, because that material fact was hidden and not discoverable through reasonable efforts by Plaintiff and the other Class Members.

133. Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and the other Class Members have sustained as a result of the Smart Scale's inability to accurately measure body composition by virtue of the fraudulent concealment doctrine.

**C. Estoppel**

134. Garmin was under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of the technologically limited Smart Scale.

135. Garmin knowingly concealed the true nature, quality, and character of the technologically limited Smart Scale from consumers.

136. Based on the foregoing, Garmin is estopped from relying on any statutes of limitations in defense of this action.

**FED. R. CIV. P. RULE 9(B) ALLEGATIONS**
**(Affirmative and By Omission)**

137. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Garmin is in the best position to know what content it placed on its website and in marketing materials during the relevant timeframe, to the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

138. **WHO:** Garmin made uniform material misrepresentations and/or omissions of fact, namely the Deceptive Biometric Marketing, on its website representations, warranties, owner's manuals, labeling and marketing, through employees receiving warranty claims, in responding to consumer complaints online, and through authorized retailers of the Smart Scale as to demonstrate that the Smart Scale is capable of accurately measuring body composition when it is not.

139. **WHAT:** Garmin's conduct here was, and continues to be, fraudulent because they omitted and concealed that the Smart Scale was technologically limited as described herein. Further, Garmin's employees and representatives made affirmative misrepresentations to Plaintiff and Class Members at the time of purchase regarding the same qualities, when consumers contacted Garmin to make warranty claims, and in responding to online consumer complaints. Garmin's conduct has the effect of deceiving Plaintiff and Class Members into believing that the Smart Scale was capable for providing accurate body composition measurements when it is not due to its reliance on foot-to-foot BMI technology as detailed herein preventing it from performing as promised and had an effective Warranty. Garmin knew or should have known this information is material to the reasonable consumer, including Plaintiff and Class Members, and impacts the purchasing decision, and yet it omits a necessary warning that the Smart Scale is incapable of accurately measuring body composition preventing it from performing as promised.

140. **WHEN:** Garmin made the material misrepresentations and/or omissions detailed herein at the time Plaintiff and Class Members performed research on the Smart Scale to gather information that would aid them in selecting the best smart scale device to purchase, at the time Plaintiff and Class Members purchased the Smart Scale, at the time of warranty claims, in responding to consumer complaints online, and continuously throughout the applicable Class periods.

141. **WHERE:** Garmin's material misrepresentations and/or omissions were made on its website, through marketing materials, in warranties, in user manuals, on the labeling of the packaging, through employees, and through authorized retailers.

142. **HOW:** Garmin made written misrepresentations and/or failed to disclose material facts regarding the nature of the Smart Scale.

143. **WHY:** Garmin engaged in the material misrepresentations and/or omissions detailed herein (e.g., knowing and concealing that knowledge that its Smart Scale is incapable of accurately measuring body composition preventing it from performing as promised) for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay for the Smart Scale. Garmin profited by selling the Smart Scale to many thousands of consumers.

144. **INJURY:** Plaintiff and Class Members purchased the Smart Scale when they otherwise would not have absent Garmin's misrepresentations and/or omissions, and, alternatively, paid more for the Smart Scale than they would have absent Garmin's misrepresentations and/or omissions.

## CLASS ALLEGATIONS

145. Plaintiff brings this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This

action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

146. Plaintiff Maurer brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and 23(c)(4), on behalf of himself and the Members of the following proposed Illinois class ("**Illinois Class**"):

> **During the fullest period allowed by law, all persons who purchased the Smart Scale in the State of Illinois for personal use and not for resale.**

147. Plaintiff Maurer brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and 23(c)(4), on behalf of himself and the Members of the following proposed multi-state class ("**Multi-State Consumer Protection Class**"):

> **During the fullest period allowed by law, all persons who purchased the Smart Scale in the State of Illinois or any state with similar laws[52] for personal use and not for resale.**

148. Excluded from the Classes are Garmin and its subsidiaries and affiliates, Garmin's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, and their immediate families.

149. Plaintiff reserves the right to amend or modify the Class definitions after they have had an opportunity to conduct discovery.

150. **Numerosity**: Fed. R. Civ. P. 23(a)(1). The Classes are so numerous and geographically dispersed that the joinder of all members is unfeasible and not practicable. While

---

[52] While discovery may alter the following, Plaintiff assert that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: California (Civil Code §§ 1750, *et seq.*), (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and (Cal. Bus. & Prof. Code §§ 17500, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*). *See Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 WL 5321510, *9-10 (N.D. Ill. Nov. 16, 2021) (certifying a similar multi-state consumer protection class).

the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that thousands of consumers have purchased the Smart Scale in Illinois, and in the States subject to the Multi-State Consumer Protection Class. Moreover, the number of members of the Class may be ascertained from Garmin's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

151. **Commonality and Predominance**: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. whether the Smart Scale is incapable of accurately measuring body composition preventing it from performing as promised;

b. whether the Smart Scale suffers from inadequate materials selection, design, and/or manufacture;

c. whether the fact that the Smart Scale is incapable of accurately measuring body composition preventing it from performing as promised would be considered material to a reasonable consumer;

d. whether Garmin knew or should have known that its Smart Scale is incapable of accurately measuring body composition, before, during, and after distribution of the Smart Scale to Plaintiff, Class Members, and/or retailers;

e. whether Garmin concealed from and/or failed to disclose to Plaintiff and Class Members that its Smart Scale is incapable of accurately measuring body composition preventing it from performing as promised;

f. whether Garmin's marketing practices are deceptive, unfair, and unlawful;

g. whether Garmin breached warranties with respect to the Smart Scale;

h. whether Garmin's Limited Warranty is unconscionable;

i. whether Garmin had a duty to disclose that its Smart Scale is incapable of accurately measuring body composition preventing it from performing as promised to Plaintiff and Class Members;

j. whether Garmin's conduct was unfair and/or deceptive;

k. whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

l. in other ways to be supplemented as a result of discovery.

152. **Typicality**: Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff and the Class Members each purchased and used the Smart Scale, and each sustained damages arising from Garmin's wrongful conduct, as disclosed herein. Plaintiff shares the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiff and all members of the putative Class are similarly affected by Garmin's common misconduct alleged herein. Plaintiff and all members of the putative Class sustained monetary and economic injuries including—but not limited to—ascertainable losses resulting from Garmin's deceptive representations and omissions concerning the Smart Scale's ability to accurately measure body composition as detailed herein.

153. **Adequacy**: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of complex class actions, including consumer class actions. Further, Plaintiff and his counsel are committed to the vigorous

prosecution of this action. Plaintiff has no conflicts of interest or interests adverse to those of the putative Class.

154. **Injunctive/Declaratory Relief**: The elements of Rule 23(e) are met. Unless restrained and enjoined, Garmin will continue to advertise, distribute, label, manufacture, market, and sell the Smart Scale in a false, misleading, unfair, and deceptive manner and Plaintiff and Class members will continue to be deceived by Garmin's marketing of the Smart Scale and receive the inaccurate readings as a consequence of the Smart Scale's uniform inability to accurately measure body composition as detailed herein. Garmin acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief, and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief is necessary in this action.

155. Plaintiff further seeks injunctive and declaratory relief requiring, *inter alia*, Garmin to cease its unfair, deceptive, and unlawful conduct.

156. Plaintiff also seeks a declaration that the Smart Scale is incapable of accurately measuring body composition, as detailed herein, at the point of purchase and this material fact is known to Garmin, but unknown to consumers, and that all the warranties cover these material limitations.

157. Plaintiff and Class Members were harmed and will experience irreparable future harm should Garmin's conduct not be enjoined because the continued use of the Smart Scale will render inaccurate body composition readings as described herein.

158. **Superiority**: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Garmin's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Garmin's misconduct. Absent a class action, Class Members will continue to incur damages, and Garmin's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT ("ICFA") 815 ILCS 505/1, *et seq.*
*(By Plaintiff, individually, and on behalf of the Illinois Class)*

159. Plaintiff, individually, and on behalf of the Illinois Class, hereby realleges paragraphs 1 through 158 as if fully set forth herein.

160. Plaintiff and Illinois Class Members are "persons" within the context of the ICFA, 815 ILCS 505/1(c).

161. Garmin is a "person" within the context of the ICFA, 815 ILCS 505/1(c).

162. At all times relevant hereto, Garmin was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

163. Plaintiff and Illinois Class Members are "consumers" who purchased the Smart Scale for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

164. The ICFA prohibits engaging in any "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 ILCS 505/2.

165. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or

practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2.

166. Garmin's conduct, as described herein, took place within the state of Illinois and constituted unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, et seq.

167. Garmin engaged in trade practices in violation of the ICFA through its Deceptive Biometric Representations by advertising and promoting its Smart Scale as being capable of measuring body composition metrics, when the Smart Scale cannot accurately measure body composition. Additionally, Garmin omitted and/or concealed that its Smart Scale is incapable of accurately measuring body composition at all times including at and prior to the point of purchase even after receiving numerous complaints directly from consumers regarding these material limitations.

168. Plaintiff Maurer and the Illinois Class Members received the uniform misrepresentations and were also exposed to the omissions alleged herein through the Smart Scales' packaging, point of sale materials, and other marketing created, controlled, and distributed by Garmin.

169. Garmin chose to package, label and market the Smart Scale in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all reasonable consumers who purchase the Smart Scale would be impacted by, and would reasonably believe, its false and misleading representations.

170. Garmin advertised the Smart Scale with intent not to sell it as advertised in violation of 815 ILCS 505/2 and 815 ILCS 510/2(9).

171. Garmin engaged in fraudulent and/or deceptive conduct which creates the likelihood of confusion or of misunderstanding in violation of 815 ILCS 505/2 and 815 ILCS 510/2(3).

172. Prior to placing the Smart Scale into the national stream of commerce and the hands of consumers, Garmin knew or should have known that its Smart Scale is incapable of accurately measuring body composition for years. However, Garmin continued to allow unsuspecting purchasers to purchase the Smart Scale for a premium without disclosing its inability to accurately measure body composition.

173. Garmin owed Plaintiff and Illinois Class Members a duty to disclose the true nature of the Smart Scale because Defendant: (a) possessed exclusive knowledge of the fact that its Smart Scale is incapable of accurately measuring body composition; (b) intentionally concealed the fact that its Smart Scale is incapable of accurately measuring body composition from Plaintiff and Illinois Class Members; and/or (c) made incomplete representations about its Smart Scale's ability to accurately measure body composition, while withholding material facts from Plaintiff and Illinois Class Members that contradicted these representations.

174. Garmin intended that Plaintiff and Illinois Class Members would, in the course of their decision to expend monies in purchasing the Smart Scale, reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the quality of the Smart Scale with respect to its capabilities.

175. Plaintiff and Illinois Class Members reasonably relied upon Garmin's misrepresentations and omissions and expected that the Smart Scale would be able to accurately

measure body composition, such that it would render the Smart Scale not fit for its ordinary use. Further, Plaintiff and Illinois Class Members reasonably expected Garmin would honor its warranty obligations as represented to them at the time they purchased their Smart Scale.

176. The facts concealed and/or not disclosed by Garmin to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Smart Scale—its ability to accurately measure body composition. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Smart Scale.

177. Garmin's conduct offends public policy as established by statutes and common law, is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury to Plaintiff and Illinois Class Members (who were unable to have reasonably avoided damages through no fault of their own) without any countervailing benefits to consumers.

178. Plaintiff and Illinois Class Members have been damaged as a proximate result of Garmin's violations of the ICFA and have suffered damages as a direct and proximate result of purchasing the Smart Scale.

179. As a direct and proximate result of Garmin's violations of the ICFA, as set forth above, Plaintiff and Illinois Class Members have suffered ascertainable loss of monies, caused by Garmin's misrepresentations and failure to disclose material information.

180. Had they been aware that the Smart Scale is incapable of accurately measuring body composition making the Deceptive Biometric Representations inaccurate, Plaintiff and Illinois Class Members either would have paid less for their Smart Scale or would not have purchased it at all or on the same terms. Plaintiff and Illinois Class Members did not receive the benefit of their bargain as a result of Garmin's misconduct.

181. Plaintiff and Illinois Class Members are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorneys' fees, pursuant to section 815 ILCS 505/10a of the ICFA. Plaintiff and Illinois Class Members are also entitled to injunctive relief, seeking an order enjoining Garmin's unfair and/or deceptive acts or practices.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT
**815 ILCS 505/1, *et seq*.**

*(By Plaintiff, individually, and on behalf of the Illinois Class)*

182. Plaintiff, individually, and on behalf of the Illinois Class, hereby realleges paragraphs 1 through 158 as if fully set forth herein.

183. The Illinois UDTPA prohibits deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

184. In the course of its business, Garmin, through itself, its agents, employees, and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose material facts regarding the Smart Scale's true qualities.

185. Specifically, by misrepresenting the Smart Scale as being capable of accurately measuring body composition, and by failing to disclose and/or actively concealing the fact that its Smart Scale is incapable of accurately measuring body composition rendering them incapable of complying with Garmin's representations in its Deceptive Biometric Marketing campaign, Garmin engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCA 510/2(a):

a. Representing that the Smart Scale has characteristics, uses, benefits, and qualities, which it does not have;

b. Representing that the Smart Scale is of a particular standard, quality, and grade when it is not;

c. Advertising the Smart Scale without the intent to sell it as advertised; and

d. Engaging in other conduct with regard to its Smart Scale, which similarly creates a likelihood of confusion or misunderstanding.

815 ILCA 510/2(a)(5), (7), (9), and (12).

186. Garmin's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions and suppressions of material facts in its Deceptive Biometric Marketing campaign, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true nature, quality, and value of the Smart Scale.

187. Garmin's scheme and concealment of the true characteristics of the Smart Scale were material to Plaintiff and Class Members, as Garmin intended.

188. Had they known the truth, Plaintiff and Class Members would have paid less for their Smart Scale or would not have purchased them at all or on the same terms.

189. Plaintiff and Class Members had no way of discerning that Garmin's representations were false and misleading, or otherwise learning the facts that Garmin concealed or failed to disclose.

190. Plaintiff and Class Members did not, and could not, unravel Garmin's deception on their own.

191. Garmin had an ongoing duty to Plaintiff and Class Members to refrain from unfair or deceptive practices under UDTPA in the course of its business.

192. Specifically, Garmin owed Plaintiff and Class Members a duty to disclose all material facts concerning the Smart Scale because Garmin possessed exclusive knowledge, intentionally concealed the true characteristics of the Smart Scale from Plaintiff and Class Members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

193. Plaintiff and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Garmin's concealment, misrepresentations, and/or failure to disclose material information.

194. Garmin's violations present a continuing risk to Plaintiff and Class Members as well as to the general public.

195. Garmin's unlawful acts and practices complained of herein affect the public interest.

196. Pursuant to 815 ILCA 510/3, Plaintiff and Class Members seek an order enjoining Garmin's unfair or deceptive acts or practices and any other just and proper relief available under the UDTPA.

## THIRD CAUSE OF ACTION
## VIOLATIONS OF STATE CONSUMER PROTECTION STATUTES
*(By Plaintiff, individually, and on behalf of the Multi-State Consumer Protection Class)*

197. Plaintiff, individually, and on behalf of the Multi-state Class, hereby realleges paragraphs 1 through 158 as if fully set forth herein.

198. Plaintiff and the Multi-State Consumer Protection Class Members have been injured as a result of Garmin's violations of the state consumer protection statutes listed above, which also provide a basis for redress to Plaintiff and the Multi-State Consumer Protection Class

Members based on Garmin's fraudulent, deceptive, unfair, and unconscionable acts, practices, and conduct.

199. Garmin's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the jurisdictions encompassing the Multi-State Consumer Protection Class.

200. Garmin's Deceptive Biometric Marketing surrounding its Smart Scale are materially misleading and violate the Multi-State Consumer Protection Class states' unfair and deceptive acts and practices laws by representing that the Smart Scale can accurately measure body composition when it cannot.

201. Garmin engaged in fraudulent, unfair and/or deceptive conduct which creates the likelihood of confusion or misunderstanding in violation of applicable law.

202. Specifically, Garmin advertised in a misleading and deceptive manner that the Smart Scale is fit for their intended purpose and could accurately measure body composition. Garmin chose to package, label and market the Smart Scale in this way to impact consumer choices, extract price premiums and gain market dominance, as it is aware that all reasonable consumers who purchase the Smart Scale would be impacted by, and would reasonably believe, its false and misleading representations.

203. Garmin intended for Plaintiff and Multi-State Consumer Protection Class Members to reasonably rely upon the material misrepresentations concerning the true nature of the Smart Scale.

204. Garmin's misrepresentations and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, did cause Plaintiff and Multi-State Consumer Protection Class Members to be deceived about the true nature of the Smart Scale.

205. Further, despite Garmin's knowledge of material facts concerning the Smart Scale's ability to accurately measure body composition, Garmin actively concealed that the Smart Scale is incapable of accurately measuring body composition from consumers by failing to disclose that material fact to consumers.

206. Garmin knew or should have known that the Smart Scale is incapable of accurately measuring body composition based upon: (1) Garmin's own internal testing, data, and surveys and (2) the multiple reports of inaccurate measurements from consumers—some of which it responded to directly acknowledging the importance of accuracy in measurements.

207. Garmin omitted, concealed, and failed to disclose to consumers that the Smart Scale is incapable of accurately measuring body composition. Rather than disclose this information, Garmin marketed the Smart Scale as being about to measure these biometrics accurately and thus, that it is fit for its intended purpose.

208. The facts concealed and/or not disclosed by Garmin to consumers, including Plaintiff and other Class Members, were material, in part, because they concerned an essential aspect of the Smart Scale—its ability to accurately measure body composition. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Smart Scale.

209. Garmin intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiff and other Class Members, to purchase the Smart Scale.

210. As a direct and proximate result of Garmin's misrepresentations, Plaintiff and Multi-State Consumer Protection Class Members suffered ascertainable losses.

211. Had they been aware of the true nature of the Smart Scale, Plaintiff and Multi-State Consumer Protection Class Members would not have purchased the Smart Scale on the same terms or for the same price or would have paid significantly less for the Smart Scale.

212. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and the Multi-State Consumer Protection Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees, costs, and injunctive, declaratory or other equitable relief as deemed appropriate or permitted pursuant to the relevant law.

**FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
*(By Plaintiff, individually, and on behalf of the Illinois Class)*

213. Plaintiff, individually, and on behalf of the Illinois Class, hereby realleges paragraphs 1 through 158 as if fully set forth herein.

214. Illinois adopted the Uniform Commercial Code ("UCC"), including U.C.C. § 2-313, which covers express warranties. *See* 810 Ill. Comp. Stat. 5/2-313.

215. That section of the UCC provides that "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(1)(a). Further, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the good shall conform to the description." *Id.* § 2-313(1)(b).

216. In connection with its sale of the Smart Scale, Garmin, as designer, manufacturer, marketer, distributor, or seller of the Smart Scale, expressly and intentionally warranted to Plaintiff and Class Members that the Smart Scale would be able to accurately measure body composition metrics and was fit for the ordinary purpose for which it is sold.

217. The Smart Scale is subject to and otherwise covered by Garmin's Warranty, which applies to each Smart Scale.

218. At all times referenced herein, Garmin was the "seller" of the Smart Scale.

219. At all times referenced herein, the Smart Scale was a "good."

220. Garmin's representations in its Warranty and regarding the technological abilities of the Smart Scale, among other representations, each constitute an affirmation or promise made by the seller to the buyer which relates to the goods, and which becomes part of the basis of the bargain, creates an express warranty that the goods shall conform to the affirmation or promise.

221. These descriptions and representations were made part of the basis of the bargain and created an express warranty that the goods shall conform to the description.

222. Each Smart Scale likewise has a substantially identical Warranty.

223. Garmin was obligated, under the terms of the express warranty, to adequately repair or replace the Smart Scale for, or otherwise reimburse the costs of, the Smart Scale to Plaintiff and Class Members.

224. Garmin breached its express warranties by selling Smart Scale that is incapable of accurately measuring body composition rendering the Smart Scale incapable of performing as advertised.

225. The Smart Scale's inability to accurately measure body composition was known to Garmin and unknown to consumers at the time of sale.

226. Garmin further breached its express written warranties when consumers make warranty claims by replacing the Smart Scale with another Smart Scale that is also incapable of accurately measuring body composition.

227. Additionally, Garmin breached its express written warranties by failing to disclose and actively concealing the true limitations of the Smart Scale from consumers, including Plaintiff and Class Members.

228. Garmin's warranty representations are made via its Deceptive Biometric Marketing, through its packaging, user manuals, advertisements, pamphlets, brochures, circulars, samples, models, and its Warranty.

229. The Smart Scale that Plaintiff and Class Members purchased do not and cannot accurately measure body composition and thus they suffered the loss of the product, loss of use of the product, and loss of the benefit of their bargain.

230. Plaintiff has privity with Garmin as he purchased the Smart Scale directly from Garmin's storefront on Amaon.com. Further, Plaintiff and the Class Members have privity of contract with Garmin through their purchase of the Smart Scale, and through the express written and implied warranties that Garmin issued to its customers. Garmin's warranties accompanied the Smart Scale and were intended to benefit end-used of the Smart Scale.

231. To the extent Class Members purchased the Smart Scale from third-party retailers or via the purchase of their homes, privity is not required because the Class Members are intended third-party beneficiaries of the contracts between Garmin and third-party retailers and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailer; in other words, the contracts are intended to benefit the ultimate consumer or user of the Smart Scale.

232. The express written warranties covering the Smart Scale were a material part of the bargain between Garmin and consumers. At the time it made these express warranties, Garmin knew of the purpose for which the Smart Scale was to be used.

233. The limitations and the exclusions in Garmin's Warranty are harsh, oppressive, one-sided, unconscionable and unenforceable, as described supra, particularly because Garmin knew that the Smart Scale contained the technological limitation described herein.

234. Any attempt by Garmin to limit or disclaim the express warranty in a manner that would exclude coverage of the technological limitation is unconscionable as a matter of law because the relevant purchase transactions were tainted by Garmin's concealment of material facts. Thus, any such effort to disclaim, or otherwise limit, its liability for the technological limitation is null and void.

235. Despite having notice and knowledge of the defective nature of the Smart Scale, Garmin failed to provide any relief to Class Members with the Smart Scale with expired warranties, failed to provide a non-defective replacement Smart Scale to Plaintiff and Class Members, and otherwise failed to offer any appropriate repair or compensation from resulting damages.

236. Had Plaintiff, Class Members, and the consuming public known that the Smart Scale is incapable of accurately measuring body composition contrary to Garmin's Deceptive Biometric Marketing, these limitations would render the Smart Scale incapable of performing as advertised, or that Garmin would not properly honor its warranty, they would not have purchased the Smart Scale on the same terms or for the same price or would have paid significantly less for the Smart Scale.

237. To the extent any express warranties do not by their terms cover the Smart Scale's incapability of accurately measuring body composition as alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiff and Class Members whole, the warranty fails of its essential purpose and, accordingly, recovery by Plaintiff

and Class Members are not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

238. Plaintiff and Class Members have performed all duties required of them under the terms of the express warranty, except as may have been excused or prevented through the conduct of Garmin or by operation of law in light of Garmin's conduct described throughout this Complaint.

239. On May 29, 2026, Garmin received timely notice regarding the concerns at issue in this litigation, and notwithstanding, Garmin has refused to offer effective remedy.

240. As a direct and proximate result of Garmin's breach of express written warranties, Plaintiff and Class Members have suffered damages and did not receive the benefit of the bargain and are entitled to recover damages.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
*(Plaintiff, individually, and on behalf of the Illinois Class)*

241. Plaintiff, individually, and on behalf of the Illinois Class, hereby realleges paragraphs 1 through 158 as if fully set forth herein.

242. Garmin is, and was at all relevant times, a merchant with respect to the Smart Scale.

243. The Smart Scale is and was at all relevant times a "good."

244. Garmin was at all relevant times involved in the manufacturing, and is the distributor, warrantor, and/or seller of the Smart Scale.

245. Garmin knew or had reason to know of the specific use for which the Smart Scale as a good, were purchased.

246. In connection with their sale of the Smart Scale, Garmin impliedly warranted to Plaintiff and Class Members that the Smart Scale was of merchantable quality.

247. The implied warranty of merchantability included with the sale of each Smart Scale means that the Smart Scale would: (a) conform to the promises and affirmations of fact on the Smart Scale's labels; (b) be fit for the ordinary purposes for which Smart Scale is used; and (c) pass without objection in trade pursuant to the Smart Scale's description as a product capable of accurately measuring body composition.

248. When purchasing the Smart Scale, Plaintiff and Class Members relied on these warranties from Garmin.

249. Garmin's implied warranty of merchantability was part of the basis for the benefit of the bargain between Garmin and Plaintiff, as well as Garmin and Class Members.

250. Garmin breached the implied warranty of merchantability because the Smart Scale was designed, formulated, manufactured, and sold without the ability to accurately measure body composition and therefore, it is incapable of performing as advertised, which at all relevant times was known to Garmin and unknown to the consumers.

251. That each Smart Scale is incapable of accurately measuring body composition constitutes a breach of the implied warranty of merchantability.

252. Specifically, the Smart Scale: (a) does not conform to the promises and affirmations of fact made by Garmin in its Deceptive Biometric Marketing, namely that is not a smart scale capable of making the accurate body measurements it is "designed" and marketed to do; (b) is not capable of performing the ordinary function of a body composition measurement scale; and (c) does not pass without objection in trade pursuant to Garmin's description of the Smart Scale, as a significant segment of the buying public would object to buying a Smart Scale that does not accurately measure body composition.

253. Privity is not required because Plaintiff purchased directly from Garmin on its storefront on Amazon.com called, The Garmin Store. Nonetheless, privity is not required because consumers, like Plaintiff and Class Members, are the intended beneficiaries of Garmin's Smart Scale and associated warranties. Garmin's retailers were not intended to be the ultimate consumers of the Smart Scale and have no rights under the warranty agreements. Garmin's warranties were designed for and intended to benefit the consumer only. Therefore, Plaintiff and Class Members were their intended beneficiaries.

254. More specifically, Garmin's intention that its warranties apply to Plaintiff and Class Members as third-party beneficiaries is evident from the statements contained on the Smart Scale's labels and in Garmin's marketing and advertising statements about the Smart Scale. Likewise, it was reasonably foreseeable that Plaintiff and Class Members would be the intended beneficiaries of the Smart Scale and warranties.

255. Moreover, each Smart Scale has identical or substantially identical product representation(s) and is incapable of accurately measuring body composition. Furthermore, the Smart Scale is marketed and advertised in an identical or substantially identical way, creating an exception to any privity requirement.

256. On May 29, 2026, Garmin has received timely notice regarding the concerns at issue in this litigation, and notwithstanding, Garmin has refused and continues to refuse to offer effective remedy.

257. As a direct and proximate result of the foregoing, Plaintiff and Illinois Class Members did not receive the benefit of their bargain and suffered, and consumers continue to suffer, economic injuries including financial damages at the point-of-sale stemming from their

overpayment for the Smart Scale, in addition to the loss of value of the Smart Scale, and loss of the Smart Scale's intended benefits.

258. Plaintiff and Class Members are entitled to all compensatory damages, as well as costs, interest and fees, including attorneys' fees, as allowed by law.

**SIXTH CAUSE OF ACTION**
**(IN THE ALTERNATIVE)**
**BREACH OF CONTRACT/BREACH OF COMMON LAW WARRANTY**
*(Plaintiff, individually, and on behalf of the Illinois Class)*

259. Plaintiff, individually, and on behalf of the Illinois Class, hereby realleges paragraphs 1 through 158 as if fully set forth herein.

260. To the extent Garmin's commitment is deemed not to be a warranty under the Uniform Commercial Code or common law, Plaintiff pleads in the alternative under common law warranty and contract law.

261. Plaintiff and Class Members purchased the Smart Scale from Garmin on its website, on its storefront on Amazon.com, or through retailers such as Walmart, Target, BestBuy, and Kohls and others as well as online retailers.

262. Garmin expressly warranted that its Smart Scale was fit for its intended purpose and that it operated as intended, including that it could accurately take certain body composition measurements.

263. Garmin made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Garmin.

264. Garmin breached the warranties and/or contract obligations by placing the Smart Scale into the stream of commerce and selling them to consumers, when it knew the Smart Scale

could not accurately measure body composition as promised and contrary to reasonable consumer expectations.

265. Each Smart Scale is uniformly incapable of accurately measuring body composition at the time it leaves Garmin's possession or control and is sold to Plaintiff and Class Members. The deficiencies and impairment of the use and value of the Smart Scale were not discoverable by Plaintiff or Class Members at the time of the purchase of the Smart Scale.

266. As a direct and proximate cause of Garmin's breach of contract, Plaintiff and Class Members were harmed because they would not have purchased the Smart Scale on the same terms or for the same price or would have paid significantly less for the Smart Scale if they had been informed of the truth about Garmin's Smart Scale.

## SEVENTH CAUSE OF ACTION
## (IN THE ALTERNATIVE)
## UNJUST ENRICHMENT
*(Plaintiff, individually, and on behalf of the Illinois Class)*

267. Plaintiff, individually, and on behalf of the Illinois Class, hereby realleges paragraphs 1 through 158 as if fully set forth herein.

268. This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any contracts between Class Members and Garmin do not govern the subject matter of the disputes with Garmin, or that Plaintiff does not have standing to assert any contractual claims against Garmin.

269. Plaintiff and Class Members conferred a monetary benefit on Garmin, and Garmin had knowledge of this benefit while aware of the Smart Scale's inability to accurately measure body composition. The average price paid by Plaintiff and Class Members for the Smart Scale was around $199.99.

270. Garmin's unfair and unlawful contract includes, among other things, making false and misleading representations, as set forth in this Complaint. Garmin's acts and business practices offend the established public policy, as there is no societal benefit from false advertising, only harm. While Plaintiff and Class Members were harmed at the time of purchase, Garmin was unjustly enriched by its misrepresentations, false statements and/or material omissions.

271. Plaintiff and Members of the Classes were harmed when they purchased Garmin's Smart Scale as a result of Garmin's misrepresentations, false statements and/or material omissions, as described in this Complaint. Plaintiff and Members of the Classes have suffered injury in fact and lost money as a result of paying the price they paid for the Smart Scale as a result of Garmin's unlawful, unfair, and fraudulent business practices.

272. Garmin's conduct allows it to knowingly realize substantial revenues from selling the Smart Scale at the expense of, and to the detriment of, Plaintiff and Class Members, and to Garmin's benefit and enrichment. Garmin's retention of those benefits violates fundamental principles of justice, equity, and good conscience.

273. Plaintiff and Class Members confer significant financial benefits and pay substantial compensation to Garmin for its Smart Scale, which are not as Garmin represents them to be.

274. Under the common law principles of unjust enrichment and quasi-contract, it is inequitable for Garmin to retain the benefits conferred by Plaintiff and Class Members' overpayment.

275. Plaintiff and Class Members seek restitution from Garmin and an order of the Court proportionally disgorging all profits, benefits, and other compensation obtained by Garmin from

its wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court:

A. Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Name Plaintiff as Class Representative of the Classes;

C. Name Plaintiff's counsel as Class Counsel for the Classes;

D. Enter a declaration that Garmin is financially responsible for notifying members of the Classes of the pendency of this suit;

E. Award damages, including compensatory and statutory damages, other monetary damages, and/or disgorgement and establishment of a constructive trust pursuant to the applicable statutes, to Plaintiff and the Classes in amounts to be determined at trial;

F. Award exemplary damages, including treble damages in accordance with proof and in an amount consistent with applicable precedent;

G. Permanently enjoin Garmin from engaging in the unlawful and deceptive conduct alleged herein;

H. Enter a declaration that the Smart Scale cannot accurately measure body composition;

I. Award Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees pursuant to the applicable statutes;

J. Award Plaintiff and the Classes pre-judgment and post-judgment interest at the maximum rate allowable by law; and

K. Award such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: October 2, 2026

Respectfully submitted,

*/s/ Harper T. Segui*
Harper T. Segui (SC Bar No. 77730)
**LEE SEGUI, PLLC**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
T: 843-790-6520
*hsegui@leesegui.com*

Rachel Soffin, (MI Bar No. P89509)
Kelsey Gatlin Davies
**PEARSON WARSHAW, LLP**
Mailing Address:
15165 Ventura Boulevard,
Suite 400
Sherman Oaks, CA 91403
T: (818) 205-2815
*rsoffin@pwfirm.com*
*kdavies@pwfirm.com*

Melissa S. Weiner
**PEARSON WARSHAW, LLP**
328 Barry Ave. S., Suite 200
Wayzata, MN 55391
T: 612-389-0600
*mweiner@pwfirm.com*

Erin Ruben
Thomas A. Pacheco*
**LEE SEGUI, PLLC**
421 N. Harrington St., Suite 460
Raleigh, NC 27603
T: 919-600-5000
*eruben@leesegui.com*
*tpacheco@leesegui.com*

**Application to be admitted pro hac vice is forthcoming*

*Attorneys for Plaintiff & Proposed Classes*

CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2026, the foregoing was filed using the Court's CM/ECF service, which will send notification of such filing to all counsel of record.

*/s/ Harper T. Segui*
Harper T. Segui (SC Bar No. 77730)
**LEE SEGUI, PLLC**
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
T: 843-790-6520
*hsegui@leesegui.com*